# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

DAVID S. GRONIK, JR., et al.,
    Plaintiffs,

  v.    Case No. 10-CV-954

SUSAN BALTHASAR, et al.,
    Defendants,

  and

SHOREWEST REALTORS, INC.,
CONTINENTAL CASUALTY COMPANY, and
ANNE SCHWARTZ,
    Third-Party Defendants,

  and

OPIO BOAT MOON, LLC, et al.,
    Plaintiffs,

  v.    Case No. 11-CV-697

CHUBB INDEMNITY INSURANCE COMPANY,
    Defendant.

---

## DECISION AND ORDER

This diversity case involves plaintiffs' claims against Chubb Indemnity Insurance Company ("Chubb") for damage done to their home in Fox Point, Wisconsin as the result of three storms that occurred in October 2009 and July 2010. Chubb insured plaintiff's property. Presently before me are several motions.

The first set of motions relate to the appraisal of plaintiffs' property damage. The applicable insurance policy provides:

> If you or we fail to agree on the amount of loss, you or we may demand an appraisal of the loss. Each party will select an appraiser within 20 days after receiving written request from the other. The two appraisers will select a third appraiser. If they cannot agree on a third appraiser within 15 days, you or we may request that the selection be made by a judge of a court having jurisdiction. Written agreement signed by any two of the three appraisers shall set the amount of the loss. . . ."

(Case No. 11-CV-00697, Insurance Policy 6, ECF No. 9-2.) Chubb exercised its rights under the policy by demanding an appraisal. In February 2012, I ordered plaintiffs to participate in the appraisal process. Chubb selected Bill Hall as its appraiser, and plaintiffs selected Tony Enea as theirs. The parties were unable to agree on a third appraiser. Thus, I appointed Donald Buettner, an experienced civil engineer, to fill that role. Neither party objected to Buettner's appointment. The parties agreed to submit all of plaintiffs' damage claims associated with the 2009 and 2010 storms to the appraisers. An appraisal award was signed by two of the appraisers (Hall and Buettner) on May 31, 2013, but the parties agree that this award does not include an assessment of all of plaintiffs' damage claims. This means the appraisal process is not yet complete.

Appraisal processes like the one outlined in plaintiffs' insurance policy are a form of alternative dispute resolution permitted under Wisconsin law. *See* Wis. Stat. § 631.85 (allowing an insurance policy to "contain provisions for independent appraisal"). An appraisal is similar to an arbitration, but it is less formal and does not resolve the entire dispute between the parties. *Lynch v. Am. Family Mut. Ins. Co.*, 163 Wis. 2d 1003, 1009–10 (Ct. App. 1991). The goal of an appraisal is to resolve valuation disputes over the amount of loss. *Id.* All other disputes, including whether the claimed loss is covered by the contract, are left for resolution by negotiation or litigation. *Id.* An appraisal is "a fair and efficient tool" for resolving valuation disputes because it allows "each [party] to appoint an

2

appraiser of their own liking, with a neutral umpire as the deciding vote." *Farmers Auto. Ins. Assoc. v. Union Pacific R. Co.*, 319 Wis. 2d 52, 73–74 (2009). Like an arbitration award, an appraisal award issued by qualified appraisers is presumptively valid. *Id.* It can be set aside "only upon the showing of fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task." *Id.*

Plaintiffs refuse to complete the appraisal process because Buettner used to work for a company called Computerized Structural Design, S.C. ("CSD"), which has worked for Chubb, and because Buettner, who retired from CSD in 2005, is still being paid for his stock under the terms of a stock redemption plan that ends on October 4, 2015. Plaintiffs argue that Buettner cannot be neutral. Plaintiffs learned about CSD's work for Chubb in May 2013 because Buettner voluntarily disclosed it. CSD is a structural engineering consulting firm that Buettner helped found in 1968. He served as CSD's president until he retired. Between 2000 and 2005, Chubb hired CSD to assess structural problems at 57 different properties. The projects were generally small, requiring CSD to assess issues like basement wall cracking or patio or driveway problems, and Chubb has continued to hire CSD for similar projects since Buettner's retirement. Plaintiffs ask me to disqualify Buettner and Chubb asks me to compel plaintiffs to complete the appraisal process.

Wisconsin insurance law contemplates that a court-appointed appraiser, like an arbitrator, will be impartial. *See* Wis. Stat. § 631.85 (allowing an insurance policy to "contain provisions for *independent* appraisal" and noting that an insurance contract can provide for application to a court for the appointment of a "*disinterested* appraiser") (emphasis added); *see also Farmers*, 319 Wis. 2d at 73 (noting that appraisals involve the

3

appointment of a "neutral umpire"). And the parties agree that they intended the third appraiser to be impartial in this case. Therefore, they ask me to determine whether Buettner is improperly biased in favor of Chubb. In Wisconsin, appraisals are governed by common law, but the parties ask me to look to the state arbitration statute for guidance on this issue. I find that this is appropriate since the role of an independent appraiser is similar to that of an arbitrator. *See Farmers*, 319 Wis. 2d at 73 n.16 (noting that a comparison between arbitration and appraisals is "apt in many ways"). The statute allows an arbitration award to be set aside if there is "evident partiality" on the part of the arbitrator. Wis. Stat. § 788.10(1)(b). "Evident partiality" exists when it "'is clear, plain, and apparent'" that partiality is so likely that a reasonable person would take action to stop the arbitration of a dispute. *Borst v. Allstate Ins. Co.*, 291 Wis. 2d 361, 385–86 (2006) (quoting *DeBaker v. Shah*, 194 Wis. 2d 104, 116–17 (1995)).

There is no evident partiality in this case. It is true that, in his role as CSD President, Buettner had a business relationship with Chubb, but Buettner stopped working for CSD eight years ago. Further, Chubb has never been a major client of CSD's and has used CSD only on small projects. Although Buettner receives retirement pay from CSD, he no longer has any control over its operations and his interest is limited to the payments due under his stock redemption plan. These facts would not lead a reasonable person to conclude that partiality is so likely that it is necessary to take action to stop the appraisal. Thus, I will deny plaintiffs' motion to disqualify Buettner and grant Chubb's motion to compel plaintiffs to complete the appraisal.

4

Plaintiffs also ask me to determine the cost to repair and the cost to replace the three structures on their property. I will deny this request. The cost of repairing the property should be determined by the appraisers. The purpose of the appraisal process is to determine the total amount of loss claimed by plaintiffs in all of their insurance claims. This means the appraisers should assess each item of damage claimed by plaintiffs in the proof of loss statements associated with both the October 2009 and July 2010 storms, decide which parts of the property are in fact damaged, and determine how much it will cost to properly repair the damage. Once they have done this, they should issue an appraisal award that lists each item of damage and the cost of repairing it.[1] Only then, might it be necessary for me to determine the replacement cost for plaintiffs' house.

As I stated at the status conference on May 10, 2013, the appraisers should not consider what caused each item of damage. They should simply assess the cost of repairing it. This court will decide what caused the damage and whether damage caused by particular perils, such as wear and tear or poor maintenance, are covered by plaintiffs' policy.

Chubb moves for partial summary judgment confirming the May 31, 2013 appraisal award. I will deny this motion because the award is incomplete. The appraisers should issue one comprehensive award that assesses all of plaintiffs' damage claims. Once they do this, I will review and, if appropriate, confirm the award.

---

[1] The partial appraisal award issued on May 31, 2013, does not provide a list of the individual items of damage. It only provides the total cost of repairing plaintiffs' property. This deficiency should be corrected in the final award. I need an itemized list of the damage so I can separate out the cost of repairing different parts of the property in the event that only part of the damage is covered by plaintiffs' policy.

5

Plaintiffs also ask me to compel Chubb to produce certain documents contained in their claims adjustment file. Chubb has already produced most of the documents in the file, but has withheld some documents on the basis of privilege. Plaintiffs claim they are entitled to all of the documents in the file regardless of privilege because they are bringing a bad faith claim against Chubb.

A claim of bad faith is separate and distinct from a claim for breach of an insurance contract. *Brethorst v. Allstate Property & Cas. Ins. Co.*, 334 Wis. 2d 23, 36 (2011). To prove a breach of contract, a plaintiff must show that an insurer failed to pay a claim in accordance with the terms of a policy. *Id.* at 36. To prove bad faith, a plaintiff must show that: 1) the insurer breached the contract by failing to pay a claim in accordance with the terms of the policy, 2) there was no reasonable basis for the insurer's denial of the claim, and 3) the insurer knew of or recklessly disregarded the lack of a reasonable basis for denying the claim. *Id.* at 46, 52–53. The first two elements are objective and the third is subjective. *Id.* at 36.

Because a plaintiff must show that the insurer knew of or recklessly disregarded the lack of a reasonable basis for denying a claim, the scope of discovery in a bad faith action is broader than in a breach of contract action. All of the documents generated during the claims adjustment process are relevant because they are evidence of what the insurer knew at the time it adjusted the claim. Since many of these documents are privileged, both the state law governing the attorney-client privilege and the federal law governing the work-product privilege allow for discovery of privileged documents in bad faith actions. *See Brethorst*, 334 Wis. 2d at 54 n.7 ("A plaintiff bringing a bad faith claim is entitled to the

6

insurer's . . . attorney-client material related to how the claim was handled."); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996) ("[W]e recognize that allowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action."). A plaintiff is not, however, automatically entitled to discover privileged materials. The plaintiff must plead "that [he or she] was entitled to payment under the insurance contract and allege facts to show that her claim under the contract was not fairly debatable," i.e. that there was no reasonable basis for its denial, and "these allegations must withstand the insurer's rebuttal." *Brethorst*, 334 Wis. 2d at 55; *see also Logan*, 96 F.3d at 977 (Before the work-product privilege can be overcome, "[t]he plaintiff must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith.").

I will deny plaintiffs' request for Chubb's privileged documents because they have not made this preliminary showing. Also, I will direct plaintiffs to wait until I resolve their breach of contract claim to renew this request. I have allowed plaintiffs to proceed with bad faith discovery because it was more efficient to conduct all discovery at once. But I believe it is best to wait until plaintiffs' breach of contract claim is resolved before I require Chubb to turn over any privileged documents. *See* Fed. R. Civ. P. 42(b) (giving a district court broad discretion to order separate trials to promote convenience, avoid prejudice or expedite matters). If Chubb prevails on the breach of contract claim, the bad faith claim will also fail and there will be no need for me to consider whether plaintiffs are entitled to Chubb's privileged documents. Alternatively, a ruling in favor of plaintiffs on the breach of

7

contract claim will make it easier to determine whether Chubb had a reasonable basis for its denial of benefits.

If I conclude that they are not entitled to the entire claims file, plaintiffs ask me to order Chubb to turn over several documents that they say are not privileged. First, they ask for the documents from the claims file that contain reserve information. Wisconsin law requires an insurer to establish a reserve fund sufficient to cover each of its liabilities. *See* Wis. Stat. § 623.21. Chubb established such a reserve after it received plaintiffs' claims, and the documents discussing the reserve are relevant to plaintiffs' bad faith claim because they reflect Chubb's estimate of the value of plaintiffs' claims. If Chubb reserved significantly more money than it offered to plaintiffs, the reserve information might be admissible to prove Chubb did not have a reasonable basis for denying plaintiffs' claims.

Chubb claims that its reserve information is privileged work product. I disagree. For the work-product privilege to apply, a document must have been prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). Plaintiffs are only seeking reserve information from before February 11, 2011, the date on which Chubb first adjusted plaintiffs' claims. Prior to that date, there was no identifiable dispute between the parties. Therefore, I find that the documents discussing the reserve were prepared in the ordinary course of business and not in anticipation of litigation. *See Logan*, 96 F.3d at 967–77 ("[W]e look to whether in light of the factual context 'the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.'") (quoting *Binks Mfg. Co. V. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983)). Thus, I will order Chubb to turn over the documents in its claims file that contain reserve information from before February 11, 2011.

Second, plaintiffs seek a copy of a memo that they believe Fred Strampe, Chubb's attorney, sent to Steven Mortensen, the Chubb employee who adjusted plaintiffs' claims. Plaintiffs believe the memo discusses Strampe's conversations with Robert Stolarczyk, Chubb's claims adjuster for claims filed by Norman and Susan Balthasar (two other defendants in this case). Stolarczyk was only supposed to be working on the Balthasars' claims and not on plaintiffs' claims. It is not clear that the memo plaintiffs seek exists, but if it does it is a privileged attorney-client communication. *See* Wis. Stat. § 905.03. Therefore, I will deny this request. Plaintiffs say they need access to the memo because it is the only way for them to learn about Strampe's conversations with Stolarczyk, but this is not true. Plaintiffs have been allowed to depose Stolarczyk and question him about his interactions with Strampe.

Third, plaintiffs seek a copy of a letter from Strampe to Stolarczyk that proposes an alliance between Stolarczyk and Mortensen. Chubb denies the existence of any such email and says that it has turned over all communications between Strampe and Stolarczyk. Therefore, I will deny this request.

Finally, plaintiffs seek copies of the drafts of the claims adjustment chart that were submitted to Chubb's counsel for review. Since Chubb's communications with its counsel are privileged, I will again deny plaintiffs' request. Plaintiffs were provided with the final version of the claims adjustment chart. This should be sufficient to help them litigate their breach of contract claim.

9

The only remaining motion pending before me is a motions for sanctions for spoliation of evidence filed by Chubb. I have a number of questions about this motion and will, therefore, schedule a follow-up telephone status conference to discuss it.

**THEREFORE, IT IS ORDERED** that plaintiffs' motion to compel production of documents (Docket #481) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to make findings related to the appraisal process and to strike portions of the appraisal report (Docket #490) is **DENIED**.

**IT IS FURTHER ORDERED** that Chubb's motion in limine and for partial summary judgment confirming the appraisal award (Docket #516) is **DENIED**.

**IT IS FURTHER ORDERED** that Chubb's motion to expedite and motion to compel plaintiffs and Tony Enea to participate in the completion of the appraisal (Docket #547) is **GRANTED**.

**IT IS FURTHER ORDERED** that a telephone status conference is scheduled for **October 8, 2013** at **10:30 a.m.** The court will initiate the call. Attorneys should call the court at (414) 297-1285 to advise of their participation.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2013.

s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge