UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DAVID S. GRONIK, JR. and MARY K. GRONIK,
S.C.G.,
M.A.G.,
DAVID S. GRONIK, JR. LIVING TRUST,
by Its Trustee David S. Gronik, Jr.,
OPIO BOAT MOON, LLC,

    Plaintiffs,

  v.                                                         Case No. 10-CV-954

SUSAN BALTHASAR and
ESTATE OF NORMAN J. BALTHASAR,
by Susan M. Balthasar as Personal Representative
of the Estate of Norman J. Balthasar,

    Defendants and Third-Party Plaintiffs,

  and

WEST BEND MUTUAL INSURANCE COMPANY,

    Intervenor Plaintiff,

  v.

SHOREWEST REALTORS, INC.,
CONTINENTAL CASUALTY COMPANY, and
ANNE SCHWARTZ,

    Third-Party Defendants,

  and

OPIO BOAT MOON, LLC, and DAVID S. GRONIK, JR.,

    Plaintiffs,

  v.

CHUBB INDEMNITY INSURANCE COMPANY,

    Defendant.

**THE GRONIKS' RESPONSE BRIEF IN OPPOSITION TO CHUBB INDEMNITY INSURANCE COMPANY'S MOTION TO AMEND ITS ANSWER AND COUNTERCLAIM**

The settlement agreement reached between the Groniks and the other parties (except Chubb, in its capacity as the Groniks' first-party insurer) in this consolidated action has no relevance to the Groniks' claims against Chubb arising out of Chubb's failure to pay for losses to the Property due under the Policy. Any amendment to Chubb's answer and counterclaim at this late stage would be futile, prejudice the Groniks, and further delay the progress of this litigation. Therefore, the Groniks respectfully request that the Court deny Chubb's motion to amend its answer and counterclaim.

## FACTUAL BACKGROUND

### I. The Groniks' Lawsuit Against the Balthasars.

On October 25, 2010, the Groniks filed the complaint against Norman and Susan Balthasar (the "Balthasars"). (DN 1.) The complaint listed the following eight causes of action, which arose out of the Balthasars' non-disclosure of defects prior to the sale of the Property:

1. Breach of contract;
2. Unjust enrichment;
3. Intentional misrepresentation pursuant to Wisconsin Statutes section 895.10;
4. Strict responsibility misrepresentation;
5. Negligent misrepresentation;
6. Fraudulent misrepresentation pursuant to Wisconsin Statutes sections 895.446 and 943.20(1)(d);
7. Violation of Wisconsin Statutes section 100.18; and
8. Negligence claim for personal injury.

(DN 1, pp. 12–30.) The Balthasars impleaded Shorewest Realtors, Inc., Anne Schwartz, and Continental Casualty Company. (DNs 18, 19.) Much later, West Bend Mutual

2

Insurance Company intervened. (DNs 465, 486.)

## II. The Groniks' Lawsuit Against the Shorewest Defendants.

To preserve diversity of citizenship, the Groniks could not bring claims against the third-party defendants in the Balthasar action. Thus, on March 27, 2012, the Groniks filed a complaint in Milwaukee County Circuit Court against Shorewest Realtors, Inc., Anne Schwartz, and Ted Dentice (collectively the "Shorewest Defendants"). The complaint listed the following seven causes of action, which also arose out of the non-disclosure of defects prior to the sale of the Property:

1. Negligence;
2. Intentional misrepresentation;
3. Strict responsibility misrepresentation;
4. Negligent misrepresentation;
5. Violation of Wisconsin Statutes section 100.18;
6. Fraudulent misrepresentation pursuant to Wisconsin Statutes sections 895.446 and 943.20(1)(d); and
7. Violation of Wisconsin Statutes section 452.133.

(Milwaukee Cnty. Cir. Ct., Case No. 12-CV-3452, Compl., Mar. 27, 2012, pp.25–33.) The parties agreed that discovery from the Balthasar action could be used in the Milwaukee County action.

## III. The Groniks' Lawsuit Against Chubb.

Between the Groniks' filing of the other two lawsuits, on July 21, 2011, the Groniks filed the complaint against Chubb. (11-CV-697, DN 1.) Unlike the Balthasar action and the Milwaukee County action, the only two plaintiffs in the Chubb action are Opio Boat Moon, LLC, and David S. Gronik, Jr. The amended complaint lists the following three causes of action, which arose out of Chubb's failure to pay for losses to

3

the Property under the Policy:

1. Declaration of coverage;
2. Declaration of appraisal process; and
3. Breach of the covenant of good faith and fair dealing/bad faith.

(11-CV-697, DN 4, pp.8–12.) On November 23, 2011, the Court consolidated the Chubb action with the Balthasar action for purposes of all pretrial proceedings and settlement. (11-CV-697, DN 24.)

IV. **Discovery.**

Prior to the consolidation of the two federal actions, on November 15, 2011, the Groniks submitted their Rule 26(a)(1)(A)(iii) computation and itemization of damages for the Balthasar action. (Halloin Aff. Ex. A.) The Groniks' itemization identified personal injury damages to the four members of the Gronik family of approximately $30 million to $35 million. (Halloin Aff. Ex. A, pp.3–6.) The Groniks substantiated their significant personal injuries with expert reports from the following experts:

1. Kim Anderson, Ph.D.
2. David Binion, M.D.
3. Carrie Redlich, M.D.
4. Ellen Hing, M.D.
5. Michael Marcangelo, M.D.
6. Mona Yudkoff, R.N.
7. Robert Shavelle, Ph.D.
8. Stanley Smith, Ph.D.

(Halloin Aff. Ex. B.) From June to November 2012, the Balthasars and Shorewest Defendants deposed the Groniks' medical experts. (Halloin Aff. Ex. C.) However, Chubb did not attend those depositions at all because the Groniks never sought personal injury damages against Chubb. (*Id.*) The Balthasars and Shorewest

4

Defendants named competing medical experts to refute the Groniks' personal injury claims. (DNs 252, 292.) These experts were also deposed.

## V. Settlement of the Groniks' Claims Against the Balthasars and Shorewest Defendants.

On June 13, 2013, all of the parties engaged in mediation. The parties to the Balthasar action and the Milwaukee County action (including Chubb, in its capacity as the Balthasars' insurer, but excluding Chubb, in its capacity as the Groniks' first-party insurer) agreed to a settlement at the mediation.[1] On or about August 6, 2013, the settling parties executed the formal settlement agreement and complete release. (DN 648-1.) The settlement agreement contains the following terms:

1. Chubb agreed to pay to the Groniks $3,500,000. (DN 648-1, p.3, ¶ 2(a).)

2. Chubb (and the other parties) agreed that the settlement proceeds were allocated solely to the Groniks' personal injuries. (DN 648-1, pp.4–5, ¶ 4.)

3. Chubb agreed that the initial settlement agreement and the formal settlement agreement would not be admissible for any purpose in the Chubb action. (DN 648-1, p.7, ¶ 12(c).)

4. The Balthasars and Shorewest Defendants agreed to assign to the Groniks all of their rights to indemnification, contribution, and subrogation. (DN 648-1, p.5, ¶ 6.)

---

[1] The total payment to the Groniks of $5,100,000 approximates two years of Mr. Gronik's lost wages, plus his medical expenses in anticipation that he might no longer be able to work. As the Court is aware, Mr. Gronik's health concerns proved to be factually correct—he became very ill in the summer of 2012 and ultimately was forced to retire around November 2013.

5

## LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure provides, "A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, Rule 16 requires a showing of "good cause" to modify a schedule. Fed. R. Civ. P. 16(b)(4). Thus, under these circumstances, the Court "is entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014).

Rule 16(b)(4)'s "good cause standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005).

Although leave to amend under Rule 15 should be freely given when justice so requires, leave "is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). Whether to grant a motion to amend a pleading is within the Court's sound discretion. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

ARGUMENT

I. **Chubb Does Not Have Good Cause to Amend Its Answer and Counterclaim.**

The primary consideration to determine whether good cause exists is whether the party seeking amendment has been diligent. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir. 2005). In its brief, Chubb argues that it has been diligent because it filed the instant motion as soon as the terms of the settlement agreement were disclosed to it. (DN 651, pp.9–10.) Nearly one year before it filed its motion, however, on June 13, 2013, Chubb learned (at the mediation it attended) that the other parties had settled. The next day, the Groniks filed a motion to stay proceedings pending execution of the formal settlement agreement, which was provided to Chubb via the Court's CM/ECF sytem. (DN 512.)

Had Chubb been diligent as it claims, it would have moved to amend its answer one year ago when it learned that the Groniks had settled with the Balthasars and Shorewest Defendants. Although Chubb claims that it was waiting for the disclosure of the terms of the settlement before moving to amend its answer, at the same time, Chubb asserts that it is not bound by these same terms of settlement. (DN 651, p.11.) Chubb's delay of nearly one year cannot be construed as diligence; thus, Chubb's motion should be denied.

II. **Chubb's Amendment Would Cause Undue Prejudice to the Groniks.**

Chubb's proposed amendment to its answer and counterclaim at this late stage, which would cause undue prejudice to the Groniks, should be denied. *See Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). The complaint against Chubb was filed

7

three years ago. In the intervening time, substantial discovery and motion practice have occurred. Summary judgment briefing, which has already been delayed several times, is scheduled to begin on September 1, 2014. (DN 644-1, p.15.) Chubb states that its proposed amendment would not affect the scheduled summary judgment briefing, yet also requests written discovery if its motion is granted. (DN 651, p.12.) If Chubb's motion were to be granted, Chubb's claimed setoff rights would be a subject of the Groniks' summary judgment brief. Thus, summary judgment briefing would have to be stayed during the pendency of this motion and any related motions (e.g., a motion to dismiss). Like the other substantial delays in this case, further delaying the summary judgment briefing would cause undue prejudice to the Groniks. To avoid this prejudice, Chubb's motion should be denied.

## III. Chubb's Amendment Would Be Futile.

Leave to amend a pleading is inappropriate if the proposed amendment would be futile. *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). An amended claim is futile if it would not survive a motion for summary judgment. *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).

### A. The Collateral Source Rule Bars Chubb's Right to Setoff.

Wisconsin's collateral source rule bars Chubb's asserted right to setoff:

> "Under the collateral source rule a plaintiff's recovery cannot be reduced by payments or benefits from other sources. The collateral source rule prevents any payments made on the plaintiff's behalf or gratuitous benefits received by the plaintiff from inuring to the benefit of a defendant-tortfeasor. The rule is grounded in the long-standing policy decision that should a windfall arise as

8

> a consequence of an outside payment, the party to profit from that collateral source is 'the person who has been injured, not the one whose wrongful acts caused the injury.'"

*Koffman v. Leichtfuss*, 2001 WI 111, ¶ 29, 246 Wis. 2d 31, 630 N.W.2d 201 (internal citations omitted). Stated another way, "benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." *Leitinger v. DBart, Inc.,* 2007 WI 84, ¶ 26 n.18, 302 Wis. 2d 110, 736 N.W.2d 1.

Chubb argues that the purpose of its proposed amendment to its answer and counterclaim is to avoid a double recovery or windfall to the Groniks. (DN 651, pp.9–12.) However, Chubb fails to mention that if it were to be allowed to setoff against the Groniks' settlement with the other parties, a windfall in Chubb's favor would arise. The Groniks and Chubb bargained for the terms of the Policy, which provides that Chubb will pay the Groniks should certain covered losses occur during the Policy period. If covered losses did occur, but Chubb is not required to pay for them, Chubb would receive a windfall by not having to pay what it bargained for. This would undermine the collateral source rule, as well as the purpose of the bargain that the Groniks and Chubb struck. Chubb cites no authority to support its position that it is entitled to a windfall, but that the Groniks are not.[2]

---

[2] The Balthasars and Shorewest Defendants assigned to the Groniks all of their rights to indemnification, contribution, and subrogation. (DN 648-1, p.5, ¶ 6.) This assignment gives the Groniks the right to pursue Chubb for contribution and subrogation in the Balthasars' and Shorewest Defendants' names. Under the collateral source rule, Chubb could not setoff any damages against what it has already paid to the Groniks under the Policy.

9

Wisconsin's collateral source rule also operates as a rule of evidence to preclude "introduction of evidence regarding benefits a plaintiff obtained from sources collateral to the tortfeasor." *Leitinger v. DBart, Inc.*, 2007 WI 84, ¶ 30, 302 Wis. 2d 110, 736 N.W.2d 1. In this case, permitting Chubb to amend its answer and counterclaim ultimately would be futile because the collateral source rule would prevent Chubb from introducing evidence of the settlement proceeds to the jury. Accordingly, Chubb's motion to amend should be denied.

### B. Chubb's Waiver of Its Subrogation Rights Constitutes a Waiver of Its Setoff Rights.

Wisconsin law provides a mechanism to avoid a double recovery by an insured: subrogation. "The doctrine of subrogation . . . deals with the right of the insurer to be put in the position of the insured to pursue recovery from third parties, legally responsible to the insured, for a loss paid by the insurer to the insured." *Cunningham v. Metro. Life Ins. Co.*, 121 Wis. 2d 437, 444, 360 N.W.2d 33, 36 (1985). Subrogation "prevents the insured from recouping a windfall double recovery." *Id.*

Chubb admits that it has waived its subrogation rights. (DN 651, p.11 n.4.) This waiver constitutes a waiver of any right to a setoff it may have had. It would be inequitable to allow Chubb to setoff against the settlement proceeds after having waived its subrogation rights—subrogation and setoff serve the same purpose. Chubb's motion to amend should, therefore, be denied.

10

### C. The Groniks Have Not Yet Been Made Whole.

Even in the absence of Chubb's subrogation waiver, Chubb's right to subrogate or setoff against the settlement proceeds would not arise until the Groniks were made whole. Under Wisconsin's made whole doctrine, "a party claiming subrogation rights may not recover until the insured is fully compensated for his or her losses." *Ruckel v. Gassner*, 253 Wis. 2d 280, ¶ 17, 646 N.W.2d 11 (2002). The Groniks suffered (and substantiated with expert testimony) nearly $50 million in damages in the Balthasar and Milwaukee County actions and settled for roughly one-tenth of that. Any recovery in the Chubb action would not even come close to making the Groniks whole (and thus triggering the right to subrogation or offset, which Chubb has waived). Chubb's motion should, therefore, be denied.

### D. The Groniks' Claims Against Chubb Are Irrelevant to the Groniks' Settled Claims Against the Balthasars and Shorewest Defendants.

The settled claims are separate and distinct from the Groniks' claims in the Chubb action. The Groniks' eight causes of action against the Balthasars and seven causes of action against the Shorewest Defendants arose out of the Balthasars' non-disclosure of defects prior to the sale of the Property. As the real estate licensees who brokered the transaction, the Shorewest Defendants had independent duties that flowed directly to the Groniks.

In the Balthasar and Milwaukee County actions, the Groniks alleged that the non-disclosure of defects to the Groniks made the four members of the Gronik family—David S. Gronik, Jr., Mary Gronik, and their two children, S.C.G. and

11

M.A.G.—seriously ill. As compensation for their personal injuries, the Groniks sought $30 to $35 million. These personal injuries were the subject of numerous expert reports and deposition testimony. Because the Groniks did not claim any personal injuries in the Chubb action under the Chubb policy, Chubb was not involved in the medical expert discovery. Indeed, Mrs. Gronik and the two children are not even parties to the Chubb action.

The settlement agreement that the Groniks reached with the Balthasars and Shorewest Defendants settled all of the Groniks' claims against those defendants. However, the settlement proceeds not only reflect the parties' estimates of their damages and liability, but also the value they placed on avoiding the risk and expense of trial. *Gouty v. Schnepel*, 795 So.2d 959, 962–63 (Fla. 2001). These estimates have no relevance to the Groniks' claims against Chubb.

Chubb does not cite any Wisconsin case law that supports its claim for setoff in these circumstances. (DN 651.) Rather, the only case it relies upon, *Illinois School District Agency v. Pacific Insurance Co. Ltd.*, 571 F.3d 611 (7th Cir. 2009), actually applies Illinois law. (*Id.* at 615; DN 651, p.9.) But even under the inapplicable Illinois law, Chubb's proposed amendment should be denied. The Groniks are not seeking damages from Chubb for the "same injuries" that were asserted in the Balthasar and Milwaukee County actions, which arose out of the non-disclosure of defects prior to the sale of the Property. *See Ill. Sch. Dist. Agency v. Pac. Ins. Co. Ltd.*, 571 F.3d at 615 ("[A] plaintiff is not entitled to recover twice for the same injury."). Rather, the Groniks are seeking damages from Chubb for the failure to pay for losses to the

12

Property under the Policy. These damages are irrelevant to the settlement reached between the Groniks, Balthasars, and Shorewest Defendants.

As a party to the settlement agreement, Chubb agreed that the settlement proceeds would be allocated solely to the Groniks' substantial personal injuries and agreed that the settlement terms would not be admissible in this action.[3] In fact, Chubb was the primary payor of the settlement funds paid to the Groniks. In these circumstances, Chubb's motion to amend its answer and counterclaim must be denied.

## CONCLUSION

Based on the foregoing, the Groniks respectfully request that the Court deny Chubb's motion to amend its answer and counterclaim.

Dated July 23, 2014.

                                     HALLOIN & MURDOCK, S.C.
                                     Attorneys for Plaintiffs

                                   s/ Scott R. Halloin
                                   Scott R. Halloin
                                   State Bar No. 1024669
                                   James J. Irvine
                                   State Bar No. 1088726

HALLOIN & MURDOCK, S.C.
839 North Jefferson Street
Fifth Floor
Milwaukee, Wisconsin 53202
p 414-732-2424
f 414-732-2422
shalloin@halloinmurdock.com
jirvine@halloinmurdock.com
S:\Clients\Gronik\7736 North Beach Drive\Balthasar Action\Pleadings\Resp. Chubb's Motion to Amend Answer and Counterclaim.wpd

---

[3] Chubb's efforts to utilize the settlement agreement in this action constitute a material breach of the agreement. (*See* DN 648-1, p.7, ¶ 12(c).)

13