# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RANDAL STRAUSS, et al.**
        **Plaintiffs,**

v.                                     **Case No. 11-CV-981**
                                            **Consolidated Case No. 12-CV-62**

**CHUBB INDEMNITY INSURANCE COMPANY, et al.,**
        **Defendant,**

**and**

**CHARTIS PROPERTY CASUALTY COMPANY,**
        **Consolidated Defendant.**

## ORDER

The above-captioned consolidated cases were recently transferred to this court upon all parties consenting to the full jurisdiction of a magistrate judge. Prior to this case being transferred to this court, the Honorable J.P. Stadtmueller issued numerous orders affecting the proceedings in this matter including an order regarding the Chubb defendants' motion for summary judgment, (Docket No. 54), the plaintiff's motion for partial summary judgment, (Docket No. 64), and Chartis' motion for summary judgment, (Docket No. 58). (Docket No. 147.)

At the time this matter was reassigned, 12 separate motions were pending. (Docket Nos. 30, 146, 154, 156, 159, 161, 163, 166, 169, 173, 189, 198.) Subsequent to this matter being transferred to this court, the plaintiffs filed a motion seeking to vacate Judge Stadtmueller's order transferring this case to this court. (Docket No. 200.) Chartis has moved to join the Chubb defendants' opposition to this motion. (Docket No. 207.) These latter two motions remain pending before Judge Stadtmueller.

EXHIBIT FF

On January 31, 2013 this court conducted a conference with the parties to discuss the status of the 12 motions pending before this court. With respect to the defendants' motion to compel, (Docket No. 198), the court denied this motion as moot. (Docket No. 209.) Eleven motions remain pending and require resolution by this court. An additional motion, (Docket No. 141), was denied without prejudice by Judge Stadtmueller, but since the plaintiff did not have an opportunity to respond, this court has permitted the movant to renew it.

**Motion to Strike (Docket No. 30.)**

To the extent that this motion has not been mooted by Judge Stadtmueller's prior actions and the subsequent proceedings in this matter, it is hereby **denied**.

**Motion in Limine to Bar Bruce Nordgren, Kristofor Nordgren and Anthony Enea from Providing Expert Testimony (Docket No. 141.)**

Judge Stadtmueller denied this motion without prejudice prior to the matter being fully briefed. (Docket No. 149.) The court permitted Chartis to renew this motion, to which the plaintiffs responded, (Docket No. 212), and Chartis replied, (Docket No. 215). The motion is **denied**.

Chartis seeks to exclude Bruce Nordgren, Kristofor Nordgren, and Anthony Enea from providing expert testimony because, in its view, their damage calculations are insufficiently definite, include costs clearly excluded under the policies, and include costs for an addition that is not part of this litigation.

Having reviewed the parties' submissions, the court concludes that the proffered expert testimony is sufficiently reliable to be admissible under <u>Daubert</u> and Rule 702. In this context, the alleged vagueness of an expert's conclusion is an appropriate subject for cross-examination. However, it is undisputed that the costs of the addition are not part of this litigation and thus any evidence as to those costs is not relevant under Rule 401. Accordingly, care should be utilized in the presentation of evidence to ensure to the extent feasible that costs for the addition are excluded from the evidence presented to the jury. Should there be a factual dispute as to whether a cost relates to

the addition or to claims arguably within the policies, this is information for the defendants to elucidate on cross-examination.

Finally, as for the dispute as to whether the experts' calculations include costs for matters outside the policies, again, to the extent that there is no dispute, the evidence is irrelevant under Rule 401 and therefore care should be exercised to exclude it from the plaintiffs' presentation to the jury. But to the extent that coverage is in dispute, the evidence is relevant and this factual dispute may be appropriately addressed by way of cross-examination. Appropriate jury instructions will advise the jury to only award damages, if proven, for those items covered under the policies.

**Motion to Join (Docket No. 146.)**

This motion is **denied as moot**. The Chubb defendants seek to join Chartis' reply with respect to Chartis' motion to strike Kim Anderson's rebuttal report. Judge Stadtmueller previously denied the underlying motion, (Docket No. 114), without prejudice, (Docket No. 148), and thus the motion to join the reply is moot.

**Motion in Limine to Bar Evidence Regarding the Plaintiffs' Claim for Additional Living Expenses (Docket No. 154.)**

This motion is **denied**. With respect to a similar provision in the Chartis policy, Judge Stadtmueller previously determined that a dispute of material fact exists as to whether the house was uninhabitable for some period during the remediation. (Docket No. 147 at 22.) This court concludes that Judge Stadtmueller's determination requires the denial of the present motion in limine.

**Motion in Limine to Bar Evidence Regarding Great Northern Insurance Company (Docket No. 156.)**

The court shall defer ruling on this motion in light of the representation that the parties are working at resolving the matter.

**Motion in Limine to Bar Evidence Regarding Alleged Bad Faith by the Chubb Defendants (Docket No. 159.)**

This motion is **denied**. The bad faith claim presents disputes of material fact for the jury to decide.

**Motion in Limine to Bar Evidence Regarding Policy Interpretation (Docket No. 161.) and**

**Motion in Limine to Bar Defendant Chartis Property Casualty Company and the Chubb Defendants from Making References to the Words Rot, Wet Rot, or Dry Rot at Trial (Docket No. 169.)**

The court addresses Docket Nos. 161 and 169 together because both present issues related to the policies' exclusion regarding wet rot and dry rot and the parties' disagreement as to whether each requires the presence of fungi. The parties agree that these terms are to be given their common and ordinary meaning and that it is the court's responsibility to determine and instruct the jury on the legal meaning of the policy provisions. However, the parties disagree as to whether the plain and ordinary meaning includes a requirement that either form of rot be the result of fungi. This disagreement has led to the Chubb defendants asking the court to bar the plaintiffs from introducing evidence that, by definition, each type of rot requires fungi to be present, (Docket No. 161), and the plaintiffs asking the court to bar the defendants from even mentioning "rot" until they have presented evidence that fungi were present, (Docket No. 169).

Thus, the foremost question before the court is whether "wet rot" and "dry rot" necessarily must involve the presence of fungi. In support of their position that the plain and ordinary meanings of these terms mandate the presence of fungi, the plaintiffs cite the definitions of these terms contained at Dictionary.com. They also note that when Chartis denied their claim, it stated that it was relying upon a scientific and technical dictionary that defined wet rot in part as "fungal decay." Likewise, it stated it utilized dictionary definitions of dry rot that indicated that it must be the result of fungi.

A review of dictionary definitions of the terms reveals that while fungi are often involved, this is not necessarily true in either wet rot or dry rot. The Oxford English Dictionary defines "wet rot" as "decay in timber caused by excessive moisture," OED Online, http://www.oed.com/view/Entry/227970 (accessed Feb. 13, 2013), and "dry rot" as "[a] decayed condition of timber in confined situations, in which it becomes brittle and crumbles to a dry powder; caused by various fungi, esp. species of *Polyporus* and *Merulius*, or by slow chemical processes. Also applied to any fungus causing this," OED Online. December 2012. OED Online, http://www.oed.com/view/Entry/58097 (accessed Feb. 13, 2013).

Similarly, Merriam-Webster defines "wet rot" as "[1:] a soft rot in which the decayed tissues are markedly watery [2:] decay of timber by fungi that attack wood having high moisture content," Merriam-Webster, http://www.merriam-webster.com/dictionary/wet%20rot (accessed Feb. 13, 2013), and "dry rot" as "[a:] a decay of seasoned timber caused by fungi that consume the cellulose of wood leaving a soft skeleton which is readily reduced to powder [b:] a fungal rot of plant tissue in which the affected areas are dry and often firmer than normal or more or less mummified," Merriam-Webster, http://www.merriam-webster.com/dictionary/dry%20rot (accessed Feb. 13, 2013).

The American Heritage Dictionary does not define "wet rot" but defines "dry rot" as [1.] A fungal disease that causes timber to become brittle and crumble into powder. [2.] A plant disease in which the plant tissue remains relatively dry while fungi invade and ultimately decay bulbs, fruits, or woody tissues." The American Heritage Dictionary, http://ahdictionary.com/word/search.html?q=dry+rot&submit.x=0&submit.y=0 (accessed Feb. 13, 2013).

The fact that Chartis indicated that it understood "wet rot" as involving fungi when it denied the claim is not dispositive as to the meaning of the term. An undefined term is construed not from the perspective of the insurer but rather from that of the ordinary insured. Bethke v. Auto-Owners

Ins. Co., 2013 WI 16, ¶¶20, 22. If a term "that is undefined in the policy is 'susceptible to more than one reasonable construction when read in context,' it is ambiguous." Acuity v. Bagadia, 2008 WI 62, ¶13 (quoting Westphal v. Farmers Ins. Exch., 2003 WI App 170, ¶21). If the ambiguous language relates to coverage, it shall be interpreted in favor of the insured to afford coverage. Id. (citing Cardinal v. Leader Nat'l Ins. Co., 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992)). A term is not ambiguous simply because a court might turn to a dictionary for an articulation of its meaning. See Garriguenc v. Love, 67 Wis. 2d 130, 135-37, 226 N.W.2d 414, 417-18 (1975).

As noted above, there are multiple definitions of both "wet rot" and "dry rot." The presence of multiple definitions might suggest a term is ambiguous; after all, if a term has multiple definitions, it generally is susceptible to more than one construction. But such an approach might well render essentially every word ambiguous. Even simple words often have more than one definition and scarcely will any two dictionaries define a word in precisely the same way. If this approach was applied to the context of an insurance exclusion whereby ambiguous terms are construed in favor of coverage, the result would be courts applying idiomatic or esoteric meanings to words because doing so would cast the exclusion in the narrowest possible light. The court finds such an approach inconsistent with the principles underlying contract interpretation.

Notwithstanding the existence of subtly varying definitions, the court does not find the terms "wet rot" or "dry rot" to be ambiguous. A reasonable insured would understand these terms in much the same way they are defined in the Oxford English Dictionary. "Wet rot is" decay in timber caused by excessive moisture, and "dry rot" is a decayed condition of timber in confined situations, in which it becomes brittle and crumbles to a dry powder, caused by various fungi or by slow chemical processes.

Because fungi is often present in wet or dry rot, the plaintiffs may present evidence as to the absence of fungi and the conclusions of any appropriately qualified witnesses that the observed

deterioration was not the result of wet or dry rot due to the absence of fungi. Thus, Docket No. 161 is **denied**. Such evidence is relevant to the question of whether the deterioration was the result of wet or dry rot.

As for the plaintiffs' motion, (Docket No. 169), this too is **denied**. A qualified individual may be able to offer testimony as to the presence of wet or dry rot based upon his or her experienced observations. The court has no reason to conclude that a witness must support his or her conclusions with any particular scientific testing. While the scientifically demonstrable presence or absence of fungi is certainly probative of whether certain deterioration is wet or dry rot, because fungi need not necessarily be present, this fact is not dispositive. It is up to the jury to determine the weight it shall afford any particular fact.

**Motion in Limine to Bar Defendants from Making Any Reference to the Lawsuits that the Strausses Filed in State Court Against Milwaukee Plate Glass Company and Nuwerx Studio, LLC (Docket No. 163.)**

The motion is **granted**. The fact that the plaintiffs are suing a contractor for defective construction is not probative of whether or not the construction was actually defective; it is merely an allegation. Thus, such evidence is not relevant under Rule 401 and therefore inadmissible under Rule 402. To the extent that any reference to this fact might possibly be relevant under Rule 401, the court concludes that any probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury, and thus the evidence is barred under Rule 403.

**Motion in Limine to Preclude Reference to the Strausses' Fireman's Fund Insurance Policies (Docket No. 166.)**

The motion is **granted**. The fact that there exists another insurer against whom the plaintiffs may have been able to pursue an action is not relevant under Rule 401 and therefore inadmissible under Rule 402. To the extent that any reference to this fact might possibly be relevant under Rule 401, the court concludes that any probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury, and thus the evidence is barred under Rule 403.

**Motion in Limine for Permission to Call Dr. Kim Anderson as a Witness Later in Trial (Docket No. 173.)**

This motion is **denied as moot**. Having rescheduled the jury trial, the accommodation requested for this witness is no longer necessary.

**Motion for Joinder to Chartis' Response in Opposition to the Plaintiffs' Motion in Limine to Bar the Defendants from Making References to the Words "Rot," "Wet Rot" or "Dry Rot" at Trial (Docket No. 189.)**

This motion is **granted**.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 13th day of February, 2013.

AARON E. GOODSTEIN
U.S. Magistrate Judge