# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

DAVID S. GRONIK, JR. and MARY K. GRONIK,
S.C.G.,
M.A.G.,
DAVID S. GRONIK, JR. LIVING TRUST,
by Its Trustee David S. Gronik, Jr.,
OPIO BOAT MOON, LLC,

        Plaintiffs,

        v.                              Case No. 10-CV-954

SUSAN BALTHASAR and
ESTATE OF NORMAN J. BALTHASAR,
by Susan M. Balthasar as Personal Representative
of the Estate of Norman J. Balthasar,

        Defendants and Third-Party Plaintiffs,

    and

WEST BEND MUTUAL INSURANCE COMPANY,

        Intervenor Plaintiff,

        v.

SHOREWEST REALTORS, INC.,
CONTINENTAL CASUALTY COMPANY, and
ANNE SCHWARTZ,

        Third-Party Defendants,

    and

OPIO BOAT MOON, LLC, and DAVID S. GRONIK, JR.,

        Plaintiffs,

        v.

CHUBB INDEMNITY INSURANCE COMPANY,

        Defendant.

---

## THE GRONIKS' ANSWER TO CHUBB INDEMNITY INSURANCE COMPANY'S AMENDED COUNTERCLAIM FOR DECLARATORY JUDGMENT

---

Plaintiffs, David S. Gronik, Jr., Mary K. Gronik, S.C.G., M.A.G., the David S. Gronik, Jr. Living Trust, and Opio Boat Moon, LLC (collectively "the Groniks"), hereby answers the Affirmative Defenses and Amended Counterclaims of Defendant Chubb Indemnity Insurance Company ("Chubb"), as follows:

## COUNT 1 - DECLARATION REGARDING COVERAGE

### PARTIES

1.     Chubb Indemnity Insurance Company is domiciled in New York, with its primary place of business in Warren, New Jersey.

**ANSWER**:   Admit.

2.     Opio Boat Moon, LLC, is a Wisconsin limited liability company with its principal office located in Milwaukee, Wisconsin. Opio Boat Moon, LLC, is a single member limited liability company that holds title to the property at 7736 North Beach Drive, Fox Point, Wisconsin. The sole member of Opio Boat Moon, LLC is the David S. Gronik and Mary Kay Gronik Living Trust. The trustee of the David S. Gronik and Mary Kay Gronik Living Trust is David S. Gronik, Jr.

**ANSWER**:   Admit.

3.     David S. Gronik, Jr. is a resident of Fox Point, Wisconsin (collectively referred to, along with Opio Boat Moon, LLC, as "the Groniks").

**ANSWER**:   Admit.

### JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship), as the parties are domiciled in different states,

2

and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER**:   The allegations contained in this paragraph are legal conclusions to which no response is required.  To the extent that a response is required, admit.

5.    Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391.

**ANSWER**:   The allegations contained in this paragraph are legal conclusions to which no response is required.  To the extent that a response is required, admit.

## INSURANCE POLICY

6.    Chubb issued an insurance policy, policy number 10781993-04, to David S. Gronik, Jr., which was in effect from December 31, 2008 to December 31, 2009 ("Policy"). A copy of the Policy is attached as Exhibit A.

**ANSWER**:   Exhibit A is not attached as indicated.  As to the remaining allegations, admit.

7.    On October 22, 2009, the Policy was endorsed to include the property at 7736 N. Beach Drive, Fox Point, Wisconsin ("Property") as covered location, and to include Opio Boat Moon, LLC as a party with an additional interest in the Property. The Policy provided limits of $5,296,000 for dwelling coverage for this property and $2,648,000 for contents coverage, as well as other coverages.

**ANSWER**:   The Groniks deny that the Policy provided limits of $5,296,000.00 for dwelling coverages for this property and $2,648,000.00 for contents coverage.  The language of the Policy speaks for itself, and the Groniks deny any characterization that is inconsistent with the complete language of the Policy.

3

8.    The Policy was renewed and effective from December 31, 2009 to December 31, 2010.

**ANSWER**:   Admit.

9.    The Dwelling section of the policy provides "coverage against all risk of physical loss to your house unless stated otherwise or an exclusion applies," subject to all terms and conditions included within the Policy.

**ANSWER**:   The language of the Policy speaks for itself.   Deny any characterization that is inconsistent with the complete language of the Policy.

10.    The Policy includes the following Gradual or Sudden Loss Exclusion:

> **Gradual or sudden loss.** We do not provide coverage for the presence of wear and  tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, dry or wet rot, or warping. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.

**ANSWER**:   The language of the Policy speaks for itself.   Deny any characterization that is inconsistent with the complete language of the Policy.

11.    The Policy includes the following Loss by Animals Exclusion:

> **Loss by animals.** We do not cover any loss caused by birds, vermin, insects, rodents, or domestic animals except loss to glass that is part of a building, storm door, or storm window. But we do insure ensuing covered loss unless another exclusion applies.

**ANSWER**:   The language of the Policy speaks for itself.   Deny any characterization that is inconsistent with the complete language of the Policy.

12.    The Policy includes the following Structural Movement Exclusion:

> **Structural movement.** We do not cover any loss caused by the settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings except loss to glass that is part of a building, storm door, or

4

storm window. But we do insure ensuing covered loss unless another exclusion applies.

ANSWER: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

13. The Policy includes the following Surface Water Exclusion:

**Surface water.** We do not cover any loss caused by:
· Flood, surface water, waves, tidal water, or water borne material from any of these;
· Overflow of water or water borne material from a body of water;
· Run off of water or water borne material from a paved surface, driveway, walkway, patio, or other similar surface; or
· Spray from any of these, from any source, even if driven by wind. But we do insure ensuring loss unless another exclusion applies.

ANSWER: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

14. The Policy includes the following Ground Water Exclusion:

**Ground water.** We do not cover any loss caused by water or water borne material in the ground, or by its pressure, leakage, or seepage. But we do insure ensuing covered loss unless another exclusion applies.

ANSWER: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

15. The Policy includes the following Water Damage to Outside Structures:

**Water damage to outside structures.** We do not cover certain kinds of loss to a fence, pavement, patio, swimming pool, hot tub, septic system, foundation, retaining wall, bulkhead, pier, wharf, dock, or bridge. These are losses caused by freezing, thawing, or the pressure of weight of water or ice, even if the water or ice is driven by wind. But we do insure ensuing covered loss unless another exclusion applies.

ANSWER: The language of the Policy speaks for itself. Deny any

5

characterization that is inconsistent with the complete language of the Policy.

16. The Policy includes the following Dampness or Temperature Exclusion:

**Dampness or temperature.** We do not cover any loss caused by air dampness, water vapor or temperature extremes.

**ANSWER**: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

17. The Policy contains the following Fungi and Mold Exclusion:

**Fungi and mold.** We do not provide coverage for presence of mold, however caused, or any loss caused by mold, other than as provided under the Extra Coverage, Mold remediation expenses. But we do cover mold resulting from fire or lightening unless another exclusion applies. "Mold" means fungi, mold, mold spores, mycotoxins, and the scents and other byproducts of any of these.

**ANSWER**: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

18. The Policy contains the following Faulty Planning, Construction or Maintenance Exclusion:

**Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions or you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

**ANSWER**: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

19. The Policy provides limited coverage, subject to a $10,000 policy limit, for mold

6

remediation, in pertinent part, as follows:

**Mold remediation expenses**
We provide coverage for mold remediation expenses you incur, made necessary by a covered water damage loss to your house, other permanent structure, or to contents if contents coverage is provided under this policy. For each occurrence, we will pay up to a total of $10,000, plus any additional amount of coverage shown in the Coverage Summary for mold remediation expenses at this location. This coverage applies only to the portion of the house, other permanent struture or contents, which directly sustained the covered water damage loss. These payments do not increase the amount of coverage for your house, other permanent structures, or contents.

**ANSWER**: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

20. The Policy provides coverage for additional living expense as follows:

**Additional living expense**
Under certain conditions (described below), when your house cannot be lived in, we cover the loss of its use. There is no deductible for this coverage.

**Extra living expenses.** If your house cannot be lived in because of a covered loss, we cover any increase in your living expenses that is necessary to maintain your household's normal standard of living. We cover these expenses for the reasonable amount of time it should take to repair or rebuild your house, or for your household to relocate, even if the policy period ends during that time.

**Fair rental value.** If party of your house you generally rent to others cannot be lived in because of a covered loss, we cover its fair rental value. We will pay up to this amount for the reasonable amount of time it should take to repair or rebuild that part of your house, even if the policy period ends during that time.

**Forced evacuation.** If your house cannot be lived in because a civil authority prohibits you from using it, we cover any increase in your living expenses that is necessary to maintain your household's normal standard of living. We also cover any loss in fair rental value if your house is normally held for rent. The prohibition must be a direct result of a loss to neighboring premises that would be a covered loss under this policy. We cover these forced evacuation expenses for up to 30 days, even if the policy period ends during that time. We do not cover loss due to cancellation of a lease or agreement.

7

**ANSWER**: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

21. The Property Conditions section of the Policy contains the following duties after a loss:

**Your duties after a loss**
If you have a loss this policy may cover, you must perform these duties:

**Notification.** You must notify us or your agent of your loss as soon as possible. In case of theft or accident, you must also notify the policy or similar competent authority.

**Protect property.** You must take all reasonable means that are necessary to protect property from further damage.

**Prepare an inventory.** You must prepare an inventory of damaged personal property, describing the property in full. If should show in detail the amount insured under this policy and actual amount of the loss. Attach bills, receipts, and other documents to support your inventory.

**Display property.** You must show us the damaged property when we ask.

**Proof of loss.** At our request you must submit to us your signed sworn proof of loss on a form we have sent you.

**Examination under oath.** We have the right to examine separately under oath as often as we reasonably require you, family members and any other members of your household and have them subscribe the same. We may also ask you to give us a signed description of the circumstances surround a loss and your interest in it, and to produce all records and documents we request and permit us to make copies.

**ANSWER**: The language of the Policy speaks for itself. Deny any characterization that is inconsistent with the complete language of the Policy.

## CLAIMS

22. The Groniks purchased the Property on October 22, 2009.

8

**ANSWER**:   Admit.

23.    The Groniks submitted a claim to Chubb on June 29, 2010 regarding water damage caused by a rain event occurring that day. Chubb assigned claim number 040510069948 to this claim.

**ANSWER**:   Admit that the Groniks submitted a supplemental claim to Chubb on June 29, 2010.  The June 29, 2010 claim speaks for itself, and the Groniks deny any characterization of that claim that is inconsistent with the language of the document. The Groniks affirmatively allege that on November 2, 2009, the Groniks contacted Cheryl Anklam of Robertson, Ryan & Associates regarding the claim.  Based upon information and belief, Robertson, Ryan & Associates is Chubb's agent.

24.    The Groniks submitted a claim to Chubb on July 29, 2010 regarding water damage caused by a rain event, sump pump failure, and water backup occurring on July 14, 2010. Chubb assigned claim number 040510076970 to this claim.

**ANSWER**:   Admit that the Groniks submitted a supplemental claim on July 29, 2010.  Deny any characterization that is inconsistent with the complete language of that document.

25.    The Groniks submitted a claim to Chubb on July 29, 2010 regarding water damage caused by a rain event, sump pump failure, and water backup occurring on July 22, 2010.  Chubb assigned claim number 047510033235 to this claim.

**ANSWER**:   Admit that the Groniks submitted a supplemental claim on July 29, 2010.  Deny any characterization that is inconsistent with the complete language of that document.

9

26. The Groniks submitted a claim to Chubb on May 19, 2011 regarding water damage occurring on April 30, 2011. Chubb originally assigned claim number 047511026554 to this claim, but subsequently merged this claim into the previous claim numbers.

**ANSWER**: Admit that the Groniks submitted a supplemental claim on May 19, 2011. Deny any characterization that is inconsistent with the complete language of that document.

27. The Groniks have contended that the costs to repair the damages to this Property exceed to the insured value of the Property, and, thus, the Property is a total loss requiring that Chubb pay its full policy limits. However, the Court held the Property is not an actual or constructive total loss. *See* Doc. 720.

**ANSWER**: Admit that the Property is a total loss. Answering further, the Court's March 3, 2015 Decision and Order speaks for itself.

## CHUBB'S INVESTIGATION

28. Chubb Executive General Adjuster, Steve Mortensen, was assigned by Chubb to adjust each of these claims.

**ANSWER**: Admit.

29. Chubb timely reserved its rights under the Policy and the law and began its investigation and adjustment of the claims.

**ANSWER**: This is a conclusion of law rather than a factual allegation. To the extent that a response is required, the Groniks deny and demand strict proof thereof.

30. Throughout the course of Chubb's investigation and adjustment of the claims,

10

Mr. Mortensen visited the Property numerous times, documented all claimed damages with notes and photographs, requested and evaluated documents and information from the Groniks related to the cause and extent of the loss and damage, and retained numerous expert consultants to investigate and evaluate the cause and origin of loss and scope of damages, and estimate the costs to repair or replace all damage covered by the Policy.

ANSWER: Deny.

31. After completing its investigation, Chubb and its expert consultants determined that much of the damage at the Property was excluded from coverage and that many types of damage claimed by the Groniks were not damaged at all or were not damaged to the extent claimed by the Groniks.

ANSWER: Deny. Chubb's experts were not provided a copy of the Policy and did not evaluate coverage exclusions. The Groniks deny this allegation to the extent that it is a characterization of the content of the documents, as the text of the documents speaks for itself. The Groniks also lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Chubb means by "many types of damage," and, therefore, deny the same and demand strict proof thereof.

32. On February 11, 2011, Chubb issued a coverage position letter describing all damages at the Property, describing which of those damages were covered under the Policy, and agreeing to make a $318,213.75 payment for all covered damages. This payment represented the actual cash value to repair or replace the covered damages;

11

because the repairs had not yet begun, Chubb was not obligated by the Policy to pay the full replacement cost at that time. A copy of this February 11, 2011 letter is attached as Exhibit B. The letter also documented that Chubb had previously made a $2,851.20 payment directly to Carl Krueger Construction on behalf of the Groniks for dewatering equipment that had been used at the Property (though Chubb also included the $2,851.20 payment in its payment to the Groniks in error . Chubb has not sought to recover the inadvertent double payment of that amount).

**ANSWER**: Exhibit B is not attached as indicated. As to the remaining allegations, the February 11, 2011 letter speaks for itself. The Groniks admit that they received checks totaling $318,213.75 on or about February 11, 2011, but deny that the payment represented the actual cash value to repair or replace all covered damages. The Groniks further deny that they received a double payment related to Carl Krueger Construction.

33. In the February 11, 2011 letter, Chubb explained that coverage for damage at the Property was limited or excluded by the following exclusions in the Policy: Gradual or Sudden Loss; Loss by Animals; Structural Movement; Surface Water; Ground Water; Water Damage to Outside Structures; Dampness or Temperature; Fungi and Mold; and Faulty Planning, Construction or Maintenance.

**ANSWER**: Admit that Chubb sent a letter on February 11, 2011. The language of the letter speaks for itself. Deny any characterization that is inconsistent with the complete language of the letter. The Groniks further deny that the referenced exclusions bar coverage under the facts of the case.

12

34. On June 20, 2011, Chubb issued an additional payment of $22,681.33 (via check dated June 13, 2011) to the Groniks for the actual cash value of covered damage to the beach house, as estimated by Chubb's experts.

**ANSWER**: The Groniks admit that they received a check for $22,681.33 on or about June 20, 2011. The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter, and deny that the payment represented the actual cash value of all covered damages to the beach house.

35. On July 19, 2011, Chubb issued an additional payment of $1,370.05 for temporary repairs and demolition services.

**ANSWER**: The Groniks admit that they received a check for $1,370.05 on or about July 19, 2011. The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.

36. On August 3, 2011, Chubb issued an additional payment of $24,311.02 for covered damage to the Property.

**ANSWER**: The Groniks admit that they received a check for $24,311.02 on or about August 3, 2011. The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.

37. On August 3, 2011, Chubb also issued an additional payment of $1,314.11 for covered damage to the Property.

**ANSWER**: The Groniks admit that they received a check for $1,314.11 on or about August 3, 2011. The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.

13

38.    On August 3, 2011, Chubb also issued an additional payment of $138,368.52. That encompassed a payment of $105,785.79 that had originally been withheld as depreciation from the replacement cost of the covered damages described in Chubb's letter of February 11, 2011, based upon the Groniks' representation that they intended to repair or replace damaged property. That also included $21,205.82 for additional living expenses incurred by the Groniks because of covered damage, and $21,205.82 for temporary precautionary repairs.

**ANSWER**:    The Groniks admit that they received a check for $138,368.52 on or about August 3, 2011.  The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.  The Groniks deny making any representation that they intended to repair the damaged property.

39.    On January 3, 2012, Chubb issued an additional payment of $9,575.10 for the depreciation that was originally withheld from the February 11, 2011 payment.

**ANSWER**:    The Groniks admit that they received a check for $9,575.10 on or about January 3, 2012.  The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.

40.    On August 15, 2012, Chubb issued an additional payment of $2,309.40 for the cost to repair new items of damage that were first alleged during the course of this litigation.

**ANSWER**:    The Groniks admit that they received a check for $2,309.40 on or about August 15, 2012.  The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.

14

41.     On October 5, 2012, Chubb issued an additional payment of $12,642.80 for the additional amount Chubb determined that it owed as a result of the amended estimate from its experts.

        **ANSWER**:   The Groniks admit that they received a check for $12,642.80 on or about October 5, 2012.  The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.

42.     Following the completion of the first part of the appraisal in May 2013, which addressed all damage at the Property except the windows, Chubb issued an additional payment of $179,502.91 for covered portions of the first part of the appraisal award.

        **ANSWER**:   The Groniks admit that they received a check for $179,502.91 on or about June 26, 2013.  The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.  The Groniks further deny that the appraisal addressed all damage at the Property.

43.     Finally, following the completion of the second part of the appraisal in December 2013, which addressed the damage to the windows alone, Chubb issued an additional payment of $29,992.56 for three windows that the appraisers had opined were damaged by storms.

        **ANSWER**:   The Groniks admit that they received a check for $29,992.56 on or about January 17, 2014.  The Groniks deny any characterization of the accompanying letter that is inconsistent with the complete language of the letter.  The Groniks further deny that the payment was based upon the agreed opinion of the appraisers.

44.     In total, Chubb has paid $743,132.75 toward the Groniks' claims.

15

**ANSWER**:   Admit.  Answering further, the Groniks deny that they received a double payment related to Carl Krueger Construction.  *See* answer to Paragraph 32.

45.    Chubb asserts that all other damages claimed by the Groniks are excluded by the following exclusions in the Policy: Gradual or Sudden Loss; Loss by Animals; Structural Movement; Surface Water; Ground Water; Water Damage to Outside Structures; Dampness or Temperature; Fungi and Mold; and Faulty Planning, Construction or Maintenance.

**ANSWER**:   The Groniks admit that Chubb has referenced those exclusions in correspondence and pleadings.  The applicability of those exclusions is a conclusion of law, rather than a factual allegation.  To the extent a response is required, the Groniks deny the applicability of those exclusions to the damage claimed.

46.    Chubb asserts that all other damages are barred in whole or in part by the known loss doctrine.

**ANSWER**:   This is a conclusion of law rather than a factual allegation.  To the extent that a response is required, the Groniks deny that the known loss doctrine bars any damages either in whole or in part.

47.    Chubb asserts that the Groniks materially breached the Policy conditions which required them to provide notice of loss as soon as possible and take all reasonable means to protect damaged property from further damage.

**ANSWER**:   This is a conclusion of law rather than a factual allegation.  To the extent that a response is required, the Groniks deny that they breached any Policy conditions.

16

48.    Despite the fact that Chubb has paid the full amount required by the Policy for these claims, the Groniks continue to assert that the Property is a total loss and that they are entitled to the full limits of the Policy. However, the Court held the Property is not an actual or constructive total loss. *See* Doc. 720.

**ANSWER**:    This is a conclusion of law rather than a factual allegation.  To the extent that a response is required, deny.  The Court's March 3, 2015 Decision and Order speaks for itself.

## COUNT II - DECLARATION REGARDING VALIDITY OF CHUBB'S APPRAISER

Because this Count has been withdrawn, no answer is provided.

## COUNT III - DECLARATION APPOINTING A THIRD APPRAISER

Because this Count has been withdrawn, no answer is provided.

## COUNT IV - DECLARATION REGARDING APPRAISAL PROCESS

Because this Count has been withdrawn, no answer is provided.

## COUNT V - DECLARATION REGARDING SETOFF FROM PAYMENTS BY SETTLING PARTIES

49.    Chubb adopts and realleges Paragraphs 1 through 48 as though fully set forth herein.

**ANSWER**:    The Groniks adopt and incorporate their answers to Paragraphs 1 through 48 of Chubb's counterclaims as if fully set forth herein.

50.    On October 9, 2013, David S. Gronik, Jr., Mary K. Gronik, S.C.G., M.A.G., David S. Gronik, Jr. Living Trust, by its trustee David S. Gronik, Jr., Opio Boat Moon, LLC (collectively, "the Groniks"); Susan Balthasar, Estate of Norman J. Balthasar, by

17

Susan Balthasar as Personal Representative of the Estate of Norman J. Balthasar (collectively, the "Balthasars"); Shorewest Realtors, Inc., Anne Schwartz (collectively, the "Shorewest Defendants"), Continental Casualty Company, and West Bend Mutual Insurance Company (collectively, the "Shorewest Insurers" ) stipulated to dismissal of the claims brought by the Groniks against the Balthasars with prejudice and without attorneys' fees or costs. Doc. 579, at 2.

       **ANSWER**:   Admit.

51.    On that same date, the same parties further stipulated to dismissal of the third-party claims between the Shorewest Defendants and the Shorewest Insurers against the Balthasars, with prejudice and without attorneys' fees or costs. Doc. 579, at 3.

       **ANSWER**:   Admit.

52.    On October 10, 2013, the Court dismissed the Groniks' claims and the third-party claims against the Balthasars, the Shorewest Defendants, and the Shorewest Insurers.

       **ANSWER**:   Admit.

53.    The stipulation was the result of a settlement agreement (the "Settlement Agreement") entered into between the Groniks, the Balthasars, the Shorewest Defendants, and the Shorewest Insurers, as well as Chubb Indemnity Insurance Company (in its capacity as the Balthasars' insurer) and Federal Insurance Company (in its capacity as the Balthasars' insurer) (collectively, the "Balthasar Insurers"), which was fully executed on or about August 6, 2013.

       **ANSWER**:   Admit.

18

54. The parties to the Settlement Agreement agreed that the terms of the settlement were confidential and would not be disclosed to Chubb in its capacity as the Groniks' first-party insurer. Therefore, apart from the confidentiality provision, the terms of the Settlement Agreement were not provided or disclosed to Chubb.

**ANSWER**: Deny. Chubb and Federal Insurance Company had separate representatives present at the mediation who represented exclusively their interests. Those representatives participated in settlement discussions, and one of the representatives, David Westrup, signed the term sheet at the mediation. Mr. Westrup "represents Chubb Indemnity Insurance Company with respect to coverage issues" in this matter. (DN 35.)

55. On June 23, 2014, pursuant to the Court's order, the Groniks re-filed an affidavit of Scott Halloin, which previously had been filed under seal on September 18, 2013 as Document 567. They also re-filed exhibits A, B, and E, to that affidavit, which previously had been filed under seal as Documents 567-1, 567-2, and 567-5, respectively. Upon their refiling, the documents were no longer sealed (Docs. 648, 648-1, 648-2, 648-5).

**ANSWER**: Admit.

56. Exhibit A to Mr. Halloin's June 23, 2013 affidavit is the Settlement Agreement. Doc. 648-1.

**ANSWER**: Admit in part. The Settlement Agreement also is contained in the June 13, 2013 Settlement Agreement, attached hereto as Exhibit 1.

57. According to the Settlement Agreement, the Balthasar Insurers agreed to pay

19

$3.5 million to the Groniks on behalf of the Balthasars, and the Shorewest Insurers agreed to pay $1.6 million to the Groniks on behalf of the Shorewest Defendants.

**ANSWER**:  Admit.

58.    The Settlement Agreement included payment to the Groniks for physical loss or damage to the Property and personal property, and additional living expenses. The amount of such payment must offset any judgment entered against Chubb.

**ANSWER**:  Deny.   The allegations contained in this paragraph are legal conclusions to which no response is required.  The allegations also contradict the plain language of the Settlement Agreement, which states:

> "**Allocation of Proceeds**. The settlement payments described above are solely for the Groniks' alleged personal injuries; no portion of the settlement payments described above is for any alleged loss of wages or earning capacity (alleged losses the Groniks did not assert) or any alleged property loss, injury, or damage (alleged losses the Groniks did assert); however, the Released Parties make no warranty about those allocations, nor do they assume any tax responsibility as to any impact that such allocation may have on the taxability of any portion of those payments."

The June 13, 2013 Settlement Agreement states:

> "The Groniks' claims against Chubb under their property insurance policy are expressly preserved; . . .
> The settlement is allocated to the Groniks' personal injury claims. . . ."

(Exhibit 1.)  David Westrup signed the term sheet at the mediation.  Mr. Westrup "represents Chubb Indemnity Insurance Company with respect to coverage issues" in this matter.  (DN 35.)  Under the terms of the June 13, 2013 Settlement Agreement, the "document is inadmissible for any purpose in the Groniks' first party action, and

20

Chubb expressly agrees not to make any effort to do so." (Exhibit 1.)

59.      Therefore, Chubb is entitled to a setoff from amounts that have been or will be paid to the Groniks as a result of the Settlement Agreement.

**ANSWER**:   Deny.  *See* answer to Paragraph 58.

## AFFIRMATIVE DEFENSES TO COUNTERCLAIM

1.      The Groniks restate and incorporate their original affirmative defenses. (11-CV-697, DN 12.)

2.      The Groniks have not been fully compensated for their damages.

3.      David Westrup, as coverage counsel for Chubb, signed the June 13, 2013 Settlement Agreement.  Under the terms of that agreement, the "document is inadmissible for any purpose in the Groniks' first party action, and Chubb expressly agrees not to make any effort to do so." (Exhibit 1.)  As a result, any effort to use the Settlement Agreement in the first party action is a breach of the Settlement Agreement.

4.      David Westrup, as coverage counsel for Chubb, signed the June 13, 2013 Settlement Agreement.  Under the terms of that agreement, the "document is inadmissible for any purpose in the Groniks' first party action, and Chubb expressly agrees not to make any effort to do so." (Exhibit 1.)  As a result, Chubb has waived its right to use any terms of the settlement in the first party coverage action.

5.      David Westrup, as coverage counsel for Chubb, signed the June 13, 2013 Settlement Agreement.  Under the terms of that agreement, the "document is inadmissible for any purpose in the Groniks' first party action, and Chubb expressly

21

agrees not to make any effort to do so." (Exhibit 1.) As a result, Chubb is estopped from using any terms of the settlement in the first party coverage action.

6.  David Westrup, as coverage counsel for Chubb, signed the June 13, 2013 Settlement Agreement. Under the terms of that agreement, the "document is inadmissible for any purpose in the Groniks' first party action, and Chubb expressly agrees not to make any effort to do so." (Exhibit 1.) As a result, Chubb is acting in bad faith by attempting to use terms of the settlement agreement in the first party coverage action.

Dated April 10, 2015.

**HALLOIN & MURDOCK, S.C.**
Attorneys for Plaintiffs


 s/ Scott R. Halloin
Scott R. Halloin
State Bar No. 1024669
James J. Irvine
State Bar No. 1088726

HALLOIN & MURDOCK, S.C.
839 North Jefferson Street
Fifth Floor
Milwaukee, Wisconsin 53202
p 414-732-2424
f 414-732-2422
shalloin@halloinmurdock.com
jirvine@halloinmurdock.com

S:\Clients\Gronik\7736 North Beach Drive\Balthasar Action\Pleadings\Answer to Chubb's Amended Counterclaim for Declaratory Judgment.wpd