UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**DAVID S. GRONIK, JR., et al.,**
        **Plaintiffs,**

v.                                                                                                                   **Case Nos. 10-cv-954**
                                                                                                                                **11-cv-697**

**CHUBB INDEMNITY INSURANCE COMPANY,**
        **Defendant.**
_____

## DECISION AND ORDER

This case is a dispute between homeowners and their homeowner's insurance company regarding coverage of various items of damage the insured property sustained. At a hearing on August 17, 2015, two issues arose which I now address. The first issue is whether plaintiffs, the Groniks, may argue that the beach house is a total loss, and the second issue is whether certain items which defendant, Chubb, agrees are covered and has already paid for should nevertheless go to the jury.

**A. Beach House**

Plaintiffs assert that they should be allowed to argue at trial that the beach house is a total loss and present expert testimony that it would cost $223,916.24 to rebuild. They argue that the appraisal did not address whether the beach house was a total loss and thus they should be free to argue their total loss theory to the jury. They further argue that in my March 3, 2015 summary judgment order I ruled that whether the beach house was damaged by a storm resulting in a total loss is a fact issue for the jury to resolve, citing the portion in which I conclude that there is a fact issue as to whether a storm surge or structural settlement caused damage to the beach house. *See* Mar. 3, 2015 Decision & Order at 18 (ECF No. 720).

I disagree with plaintiffs. First, I have concluded several times now that the appraisal set the total amount of structural damage to the property, including the beach house. *See, e.g., id.* at 17 ("Contrary to plaintiffs' assertion, the appraisal award encompassed items relating to the beach house."); June 17, 2014 Decision & Order at 13 (ECF No. 644) (confirming Part 1 of the award); *see also* Mortensen Aff. Ex. A at 83 (ECF No. 666-1) (governing insurance policy entitling either party to "demand an appraisal of the loss" and stating that "[w]ritten agreement signed by any two of the three appraisers shall set the amount of loss"). As part of the appraisal process, plaintiffs' appraiser Anthony Enea provided an itemized list of all damage plaintiffs believed was caused by the storm, and this is the list the appraisers worked off of in completing the appraisal. *See* June 17, 2014 Decision & Order at 5 (ECF No. 644). "Thus, the appraisal award addresses all of the repairs that plaintiffs indicated were necessary." *Id.* This list included an entire section titled "Beach House" with over 50 line items plaintiffs believed was damaged by the storm, and this list does not include a rebuilding cost or a line item stating that the beach house was a total loss. *See* Schenk Aff. Ex. JJJ at 32–35 (ECF No. 669-12). "If plaintiffs wanted additional items considered they should have submitted them to the appraisers." June 17, 2014 Decision & Order at 5 (ECF No. 644). Contrary to plaintiffs' assertion that because the appraisal did not consider the rebuilding cost of the beach house they should be free to argue it now, the fact that plaintiffs failed to submit it to the appraisers for consideration bars them from raising it now. The appraisal process was designed to address all structural damage to the property, and at this point I have already confirmed it and ruled that it sets the total amount of loss to the property. Thus, plaintiffs are barred from arguing any

2

structural damage not included in the appraisal award, including the rebuilding cost for the beach house.

My summary judgment decision is consistent with this conclusion. At summary judgment, I rejected plaintiffs' argument that the beach house was not subject to the appraisal process and thus should be considered a total loss. *See* Mar. 3, 2015 Decision & Order at 17 (ECF No. 720) ("Contrary to plaintiffs' assertion, the appraisal award encompassed items relating to the beach house."). I then addressed specific line items in the appraisal award related to the beach house on which defendant had moved for summary judgment. Several line items of the appraisal related to damage to the beach house's main room, and it is with regard to these individual line items, not the rebuilding cost, that I found a fact issue for the jury.[1]

**B. Items Still at Issue**

The parties also dispute which line items of the appraisal award are still in dispute and should be presented at trial. The dispute arises because before the appraisal process

---

[1] Specifically, I stated:

> Finally defendant argues that the Structural Settlement exclusion precludes coverage of *certain damage to the beach house's main room* because the damaged was caused by the settling of the structure. Plaintiffs respond that this damage was caused by a "storm surge" in the basement which lifted a portion of the beach house off of its floor joists, citing its expert Karls' observation of dripping floor joists after a flood. Although Karls acknowledges that the structural settlement may also have caused the damage, plaintiffs present enough to bar summary judgment. This issue must be resolved by the finder of fact.

*Id.* at 18 (emphasis added).

was completed, defendant made a series of payments to plaintiffs, which plaintiffs accepted, for structural damage to the property. Defendant made these payments based on estimates from Belfor, a property restoration company, and the process Belfor used in assessing damage was different from the process the appraisers used. Thus, when the appraisal was complete and confirmed, it proved impossible for the parties to line up these pre-payments with specific line items listed in the appraisal. So, defendant went through the appraisal line items and concluded that a total of $661,383.61 of the line item damages from Part 1 of the award was covered under the policy. Mortensen Aff. Ex. M (ECF No. 666-13). Because defendant had already issued several pre-payments for property damage totaling $481,880.70, it paid plaintiffs the balance–$179,502.91–and provided plaintiffs with a list of appraisal items they felt were not covered and therefore still at issue in the case. It did not move for summary judgment on the items it agreed were covered because it believed they had been resolved.[2]

Plaintiffs now argue that the line items that defendant agreed were covered are still at issue in the case because defendant cannot prove that the pre-payments it issued before the appraisal were issued for specific line items of damage listed in the appraisal. However, I disagree. As noted above, the appraisal award set the total amount of loss to the property. Thus, Defendant is not obligated to pay more than what the appraisal awarded, including any pre-payments it made. Once the appraisal was confirmed, any previous estimates from Belfor or anyone else became meaningless, and the only

---

[2] It appears defendant has also made some payments since June 27, 2013, after determining certain items were covered. The parties do not seem to dispute that these payments made after the appraisal was complete resolved certain line items.

4

damages estimate that mattered was the appraisal award. Further, the appraisal did not address any payments made before the appraisal. Schenk Aff. Ex. JJJ at 1 (ECF No. 669-12) ("The appraisal does not address deductible and pre-payments if any."). Once the appraisal became the binding calculation of loss, Defendant sent plaintiffs a letter on June 27, 2013, essentially re-allocating its $481,880.70 of pre-payments to portions of the appraisal award it agreed were covered under the policy and paid plaintiffs $179,502.91 to pay for the rest of the covered items. It then attached a list of line items it considered not covered, or in other words a list of line items still at issue. Thus, Defendant did match up its pre-payments with the specific line items that its pre-payments were intended to cover; all of the line items that it omitted from its June 27, 2013 list. It does not matter that it could not line up Belfor's estimate process with the appraisal award because once the appraisal award was confirmed, Belfor's estimates no longer mattered. Defendant correctly re-assessed its coverage opinion under the now-governing appraisal award, and it re-allocated its pre-payments to line up with this award.

To reach any other conclusion would risk plaintiffs recovering a windfall. Defendant has already made a series of pre-payments totaling $481,880.70 to plaintiffs. If I accept plaintiffs' argument, plaintiffs would keep that payment and at the same time potentially recover the appraisal value of the contested items. Further, it would be an incredible waste of everyone's time to litigate hundreds of line items of damage that the parties agree are covered simply because Defendant made pre-payments based on an estimate process that is irreconcilable with the appraisal process.

The opposite conclusion would also be unfair to Defendant. Defendant sent its June 27, 2013 letter to plaintiffs' attorney explaining its reallocation of the pre-payments and

5

listing all the appraisal items it believed were still at issue. Plaintiffs accepted Defendant's additional $179,502.91 payment and never contested Defendant's re-allocation of the funds. Defendant proceeded to summary judgment arguing only the items in its June 27, 2013 list, and again plaintiffs did not raise an objection to Defendant's reallocation of the pre-payments. It was only as we were preparing for trial that this issue arose. Thus, allowing plaintiffs to litigate these line items would punish Defendant and reward plaintiffs for plaintiffs' failure to raise the issue in a timely manner. *See Muller v. Soc'y Ins.*, 309 Wis. 2d 410, 436 n.9 (2008) (noting that "the insured by accepting payment has lost his right to demand payment" (quoting *Heifetz v. Johnson*, 61 Wis. 2d 111, 120 (1973))); *Parsons v. Am. Family Ins. Co.*, 305 Wis. 2d 630, 635–36 (Ct. App. 2007) (explaining that the cashing of a check constitutes "an accord and satisfaction of claims").

Thus, the only items that are still at issue are those defendant listed in its June 27, 2013 letter. Defendant has provided me with an updated version of this list in which it has indicated which line items it contends were resolved on summary judgment and which are issues for the jury. Plaintiffs have raised several objections to this list, arguing that some of the items Defendant contends were resolved on summary judgment, in fact, were not. First, plaintiffs argue that line items 123, 124, 130, 131, and 132 all relate to mechanicals, a coverage issue on which I denied summary judgment. I conclude that I did grant summary judgment in favor of defendant on these items. I denied summary judgment only on a narrow issue of whether "mechanicals in the basement mechanical room constitute installation issues." Mar. 3, 2015 Decision & Order at 20 (ECF No. 720). In its summary judgment brief, defendants listed these mechanical installation issues as line items 136, 137, and 140. Def.'s Br. in Supp. of Summ. J. at 34 (ECF No. 673). Defendant included

6

line items 123, 124, 130, 131, and 132 in a separate group of items, on which I granted summary judgment concluding that they were excluded by the Dampness or Temperature Exclusion and the Gradual or Sudden Loss Exclusion. Mar. 3, 2015 Decision & Order at 20 (ECF No. 720). Plaintiffs did not contest at summary judgment that these line items should not have been grouped in this category of damages, and I will not revisit the issue at this late stage in the litigation.

Second, plaintiffs argue that line items 602 and 603 are not related to observation holes and thus were not dismissed on summary judgment. At summary judgment, defendant included line items 602 and 603 in their list of line items related to observation hole damage, Def.'s Br. in Supp. of Summ. J. at 34 (ECF No. 673), and I granted summary judgment regarding damage intentionally caused to create observation holes. However, defendants also listed line items 602 and 603 in a group of line items related to staining of the roof framing and decking, *id.* at 33, and I denied summary judgment on this group of line items. These items, which deal with insulation and vapor barriers, appear to be issues regarding the staining in the roof framing and decking and thus were not eliminated on summary judgment. Plaintiffs also point out that they are entitled to sales tax on items the jury determines are covered, and I agree with plaintiffs on this point. *See* Mar. 3, 2015 Decision & Order at 21 (ECF No. 720) (granting summary judgment on sales tax on *uncovered* items).[3]

Attached to this decision and order as Appendix A is a list of line items I have

---

[3] Plaintiffs argue that these 7 items are merely examples of errors defendant made and that these errors are reason for me to side with plaintiffs on this issue. I went through defendant's spreadsheet line-by-line and confirmed that all other line items it listed as resolved on summary judgment were, in fact, resolved on summary judgment.

7

determined are still at issue in this case. In addition, I understand that the following issues will also go to the jury: mold remediation expenses, additional living expenses, and personal property damage. If parties have specific objections related to any of these items, I will address them at the final pretrial conference scheduled for December 14, 2015. The parties do not need to submit objections in writing beforehand; I will hear oral objections and argument on that date.

**THEREFORE, IT IS ORDERED** that plaintiffs' motion for summary judgment on Defendant's Setoff Defense (ECF No. 791) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's expedited motion to strike plaintiffs' motion for summary judgment (ECF No. 793) is **DENIED** as **moot**.

Dated at Milwaukee, Wisconsin, this 20th day of November, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

8

Case 2:10-cv-00954-LA   Filed 11/20/15   Page 8 of 11   Document 795

# APPENDIX A

| LINE # | AMOUNT | DESCRIPTION | CATEGORY |
|---|---|---|---|
| 17 | $26,707.12 | Paint existing & new trim, windows, siding - labor & materials | windows |
| 23 | $1,016.00 | Refinish front door | front door |
| 24 | $285.75 | Remove light scone and recess box, reinstall fixture | front door |
| 61a | $30,250.00 | Allowance for landscaping due to window replacement/exterior work | windows |
| 98 | $1,900.00 | Fill crack in foundation wall with epoxy on west wall | drywall cracks/paint touch ups |
| 136 | $381.00 | Patch existing foundation wall where mechanical penetrations were running through masonry wall | mechanical penetrations |
| 137 | $1,143.00 | Re-route existing mechanical penetrations currently running through masonry wall into box sill | mechanical penetrations |
| 140 | $889.00 | Re-route existing mechanical penetrations currently running through masonry wall into box sill | mechanical penetrations |
| 397 | $508.00 | Touch up existing paint trim | drywall cracks/paint touch ups |
| 440 | $5,825.00 | Finish new window/door units at interior, touch up existing trim where it meets new material | windows |
| 538 | $249.71 | Remove existing insulation and vapor barrier at rafter and wall cavities where accessible | staining on roof framing/decking |
| 539 | $514.80 | Install new fiberglass batt insulation and vapor barrier at accessible wall and rafter cavities | staining on roof framing/decking |

9

| 579 | $7,620.00 | Finish new window/door unit at interior, and touch up existing trim where it meets new material | windows |
| 591 | $2,641.60 | Repair drywall cracks in exercise room | drywall cracks/paint touch ups |
| 597 | $1,016.00 | Remove existing insulation and vapor barrier at rafter and wall cavities where accessible | staining on roof framing/decking |
| 598 | $1,716.00 | Install new fiberglass batt insulation and vapor barrier at accessible wall and rafter cavities | staining on roof framing/decking |
| 599 | $158.75 | Reinstall existing exhaust fan venting to exterior | staining on roof framing/decking |
| 600 | $1,828.00 | Remove existing insulation and vapor barrier at rafter and wall cavities where accessible | staining on roof framing/decking |
| 601 | $3,000.00 | Install new fiberglass batt insulation and vapor barrier at accessible wall and rafter cavities | staining on roof framing/decking |
| 602 | $1,100.00 | Remove and replace insulation R-30 | staining on roof framing/decking |
| 603 | $140 | Visqueen vapor barrier | staining on roof framing/decking |
| 606 | $254.00 | Finish new window/door units at interior; touch up existing trim where in meets new material | windows |
| 668 | $101.60 | Remove existing exterior grade door, frame, and storm door at north exterior door | windows |
| 670 | $6,217.92[4] | Install new railing systems at flat roof area; remove windows and install new | windows |

---

[4] Defendant erroneously listed the value of this damage as $4,967.92 in the materials it submitted on September 8, 2015.

| | | | |
|---|---|---|---|
| 672 | $685.80 | Provide new exterior grade door, frame, and storm door at north exterior door | windows |
| 673 | $468.00 | Install new exterior grade door, frame, and storm door at north exterior door | windows |
| 676 | $8,984.25 | Replace picture windows | windows |
| 677 | $157.30 | Stain and finish new exterior door at north exterior door location | windows |
| 678 | $157.30 | Finish new exterior door, frame, and storm door at north | windows |
| 680 | $624.00 | Caulk all areas where siding meets trim and where windows meet trim. Remove caulk from where it is not supposed to be installed. Finish new windows. | Windows |
| 681 | $114.00 | Provide new hardware for new exterior grade door and storm door at north exterior door | windows |
| 710 | $203.20 | Remove remaining wall finishes | beach house - main room |
| 711 | $3,876.68 | Provide new stain grade casing and T&G vertical wall siding materials, cove, and shoe | beach house - main room |
| 712 | $949.96 | Install new T&G materials, casing, cove, and shoe at walls | beach house - main room |
| 713 | $1,397.00 | Finish new stain grade wall, casing, cove, shoe, and window materials and touch up where existing meets new | beach house - main |
| Award Part 2 | $647,224.62 | Windows needing to be replaced | windows |
| **TOTAL** | $760,305.36 | | |